POLSINELLI LLP
WESLEY HURST, ESQ. (CA # 127564)
1801 Century Park East, Suite 1801
Los Angeles, CA 90067
Telephone: (310) 203-5337
Facsimile: (310) 556-1802
**DESIGNATED AS COUNSEL FOR SERVICE**

DAVID D. FERGUSON (MO #37854)
AARON C. JACKSON (MO #59392)
Polsinelli PC
900 West 48th Place, Suite 900
Kansas City, MO 64112
Telephone : (816) 753-1000
Facsimile: (816) 753-1536

ATTORNEYS FOR U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR THE REGISTERED HOLDERS OF
WAMU COMMERCIAL MORTGAGE SECURITIES
TRUST 2007-SL3 COMMERCIAL MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2007-SL3

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
(Sacramento)

| | |
|---|---|
| **United States of America,** | |
| Plaintiff | |
| | Case Number: 2:12-cv-00705-MCE-DAD |
| v. | |
| | **STIPULATION AND ORDER OF PLAINTIFF, SECURED LENDER / CLAIMANT, AND BORROWER TO APPOINTMENT OF RECEIVER TO TAKE POSSESSION OF, ADMINISTER, MARKET FOR SALE, AND SELL PROPERTY SUBJECT TO POTENTIAL FORFEITURE AND LIEN** |
| **Real Property Located at 149 G Street, Lincoln, California, Placer County, APN: 008-266-015-000,** *et al.,* | |
| Defendants | |

COMES NOW United States of America, the Plaintiff in this action (**"Plaintiff"**), U.S. Bank National Association, as Trustee for the Registered Holders of WAMU Commercial

Mortgage Securities Trust 2007-SL3 Commercial Mortgage Pass-Through Certificates, Series 2007-SL3 (**"Lender"**), and Volen 7 Properties, LLC, a California limited liability company, each by and through undersigned counsel, and hereby stipulate, and request an order of this Court approving said stipulation (the **"Stipulation"**), to the appointment of Brandon Scott to act as receiver (the **"Receiver"**) to take possession of, administer, and market for sale certain real property, improvements thereon, and personal property that is both subject to forfeiture in this action and subject to a first-priority lien in favor of Lender, securing indebtedness of greater than $900,000.00 owed to Lender.  In support of this Stipulation and the parties' request for approval of the same, the parties state as follows.

*The Loan*

    1.    Lender is the holder and owner of that certain commercial real estate mortgage loan (the **"Loan"**) in the original principal amount of $860,000.00 (the **"Loan"**), the borrower under which is Volen Properties 7, LLC (**"Borrower"**).

    2.    In connection with Lender's ownership of the Loan, Lender is the holder of that certain Promissory Note, dated December 15, 2006, in the original principal amount of $860,000.00, the maker of which is identified as Borrower (the **"Note"**).  A copy of the Note is attached hereto as <u>Exhibit 1</u>.

    3.    In connection with Lender's ownership of the Loan, Lender is also the owner of that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing (the **"Security Instrument"**), dated as of December 15, 2006, under which Borrower is the grantor.  A copy of the Security Instrument is attached hereto as <u>Exhibit 2</u>.

    4.    By the terms of the Security Instrument, Borrower granted a first-priority lien on certain real property, improvements thereon, and personal property identified in the Security

Instrument (collectively, the **"Property"**).  The Property includes certain real property and improvements, comprising an 8822 square-foot, seven-unit office building located at 10940 Fair Oaks Boulevard in Fair Oaks, California.

5.  The Loan is in default, including by virtue of Borrower's failure to make monthly payments on the Loan, as and when called for under the Note and Security Instrument, since October 2012.  Borrower's obligations under the Loan have been accelerated and are immediately due and owing to Lender.

*Commencement of This Action*

6.  Borrower's principal and managing member is Bart W. Volen (**"Volen"**).  On March 20, 2012, the United States commenced this *in rem* action against certain properties owned by entities owned and/or controlled by Volen, seeking forfeiture of such properties. Among the properties that are the subject of this action is the Property.

*Request for Relief*

7.  Accordingly, the Property is subject to liquidation, either via the foreclosure process (which may be judicial or non-judicial under California law) by virtue of Borrower's default on the Loan, or via the forfeiture provisions of 18 U.S.C. Section 981, *et al.*

8.  Plaintiff, Lender, and Borrower desire to maximize the return from a sale of the Property, so that Lender's secured indebtedness may be paid in full from such sale and so that the proceeds of the sale in excess of the debt owed to Lender may be disbursed to the IRS pending further order of the Court.  Lender has duly filed its claim in this case in the following amounts: principal in the amount of $811,624.33; interest through April 19, 2012 in the amount of $7621.05; default interest through April 19, 2012 in the amount of $338.19; interest after April 19, 2012 at the per diem rate of $155.40; default interest after April 19, 2012 at the per

diem rate of $112.73; processing and documentation fees in the amount of $75.00; fees and costs, including attorneys fees, through April 19, 2012 in the amount of $14,755.00; and fees and costs, including attorneys fees, that have accrued and have continued to accrue thereafter (collectively, the **"Indebtedness"**).

9. While nothing is certain, Plaintiff, Lender, and Borrower have agreed that, and are hopeful that, the Property may have a value in excess of the Indebtedness. Plaintiff, Lender and Borrower have further agreed that neither a foreclosure sale of the Property nor an immediate sale of the Property under 18 U.S.C. Section 981 would maximize the return on the Property and instead would virtually ensure that the return for the Property would be less than the amount of the Indebtedness. Accordingly, Plaintiff, Lender, and Borrower have stipulated and agreed that the superior course of action would be to appoint Scott as Receiver, without bond, so that Scott may administer the Property, take such actions as are reasonably necessary to increase the marketability of the Property, market the Property – in an orderly but prompt fashion – for sale, and then sell the Property pursuant to a procedure agreed to by Plaintiff and Lender, as such sale would be in the best interests of the receivership estate created by the appointment of the Receiver, and maximize return for the benefit of Plaintiff, Lender, and Borrower.

10. Scott is a principal at BLR Asset Management (**"BLR"**), which has experience managing real property throughout the State of California. A copy of Scott's *curriculum vitae* is attached hereto as Exhibit 3.

11. Scott would retain Voit Real Estate Services as the broker for sale of the Property. Scott proposes to market the Property for sale over a period of approximately 120 days. After such marketing Scott will, subject to the terms and provisions hereinafter set forth in this paragraph, sell the Property free and clear of Plaintiff's interest and Lender's interest on a

specified sale date (the **"Sale Date"**) to the third-party bidder (the **"Sale"**) placing the highest and best bid for the Property (the **"Third Party Bid"**), provided, however, if such Sale would result in a yield of net sale proceeds (after payment of a sale commission of six percent of the gross sale price to Voit, together with other expenses of sale) less than the Indebtedness and if such Sale is not approved by Lender, the Receiver will on the Sale Date sell the Property to the Lender (the **"Lender Sale"**) for an amount that is $1000.00 in excess of the Third Party Bid (the **"Lender Sale Price"**) (which Lender Sale Price may be paid by Lender by Lender crediting such Lender Sale Price against the Indebtedness).

12. Following consummation of the Sale or Lender Sale, the net proceeds of the sale up to the amount of the Indebtedness shall be delivered to Lender at closing, the Receiver shall retain an amount equal to the amount of his unpaid fees and costs pending approval of such fees and costs by the Court, the Receiver shall forward remaining proceeds to the IRS pending further order of the Court, Lender shall release its lien on the Property, and the IRS shall release and withdraw its lis pendens on the Property.  The Court's Order pursuant to this Stipulation would be self-effectuating and would not only approve the Sale or Lender Sale, but serve as confirmation of the same, without further order of the Court, and the purchase price paid after the Receiver's marketing efforts would establish the fair value of the Property, the parties hereto waiving the benefits of any other procedure, under law or otherwise, that may establish fair or appraised value.  In the event of sale to the Lender, no broker's commission shall be payable in connection with such sale.

13. Except for the rights and benefits established by the terms of this Stipulation, and so long as the parties hereto comply with their obligations hereunder, upon entry of the order submitted herewith (the "**Order**") Lender waives any rights to further litigate against the United

States concerning its interest in the Property or to petition for remission or mitigation of the forfeiture.

14.	The United States, Lender, and Borrower agree to execute further documents, to the extent reasonably necessary, to implement the terms of this Stipulation and the Order and to convey marketable title to the Property.

15.	Upon entry of the order submitted herewith, each of the parties to this Stipulation shall bear their own attorneys fees and costs that were incurred with respect to the commencement, prosecution, and defense of this litigation that were specifically applicable to the Property, provided, however, this Stipulation will not waive Lender's rights under its applicable loan documents to recover its fees and costs from Borrower, any other obligor for the debt owed to Lender, or from proceeds of Lender's collateral, including the Property.

16.	For purposes of effectuating this Stipulation, the parties do not contest that there was probable cause for the posting of the defendant Fair Oaks Property, and for the commencement and prosecution of this forfeiture action against the defendant Fair Oaks Property, and further agree that the Court may enter a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465, with respect to the defendant Fair Oaks Property.

17.	Third parties, including any title company, would be entitled to rely upon the Court's Order, and a certified copy of the Order would be recordable, by any such title company or by any party, with the office of the recorder of deeds in the county in which the Property is situated.

18.	If any title insurance company working with any party to insure title to the Property requires revisions to the Order, the parties may present a modified version of the Order for expedited consideration and entry by the Court.

WHEREFORE, Plaintiff, Lender, and Borrower agree to the Stipulation as set forth herein and request that the Court enter the order submitted herewith.

| | |
|---|---|
| Dated: October 31, 2013 | BENJAMIN B. WAGNER<br>United States Attorney<br><br>By:   /s/ Kevin C. Khasigian<br>KEVIN C. KHASIGIAN<br>Assistant U.S. Attorney |
| Dated: October 31, 2013 | POLSINELLI LLP<br><br>By:   /s/ Wesley Hurst<br>WESLEY HURST<br>Counsel for Lender |
| Dated: October 31, 2013 | ORRICK HERRINGTON &<br>SUTCLIFF, LLP<br><br>By:   /s/ Courtney J. Linn<br>COURTNEY J. LINN<br>Counsel for Borrower |

# ORDER APPROVING STIPULATION FOR APPOINTMENT OF RECEIVER AND FOR MARKETING AND SALE OF PROPERTY BY RECEIVER

On October 30, 2013, Plaintiff and other parties in interest filed with the Court their stipulation calling for the appointment of a receiver to take possession of, administer, and market for sale certain property that is subject to this action (the **"Stipulation"**), and the parties requested that the Court enter an order approving the Stipulation. The Court, having jurisdiction over the parties and the subject matter, and being advised in the premises and for good cause shown, approves the Stipulation and finds and orders as follows.

1. The parties who filed the Stipulation and who have sought approval of the Stipulation are the United States of America, the Plaintiff in this action (**"Plaintiff"**), U.S. Bank National Association, as Trustee for the Registered Holders of WAMU Commercial Mortgage Securities Trust 2007-SL3 Commercial Mortgage Pass-Through Certificates, Series 2007-SL3 (**"Lender"**), and Volen 7 Properties, LLC, a California limited liability company (**"Borrower"**). The parties have stipulated to the appointment of Brandon Scott to act as receiver (the **"Receiver"**) to take possession of, administer, and market for sale certain real property, improvements thereon, and personal property that is both subject to forfeiture in this action and subject to a first-priority lien in favor of Lender, securing indebtedness of greater than $900,000.00 owed to Lender.

2. Lender is the holder and owner of that certain commercial real estate mortgage loan (the **"Loan"**) in the original principal amount of $860,000.00 (the **"Loan"**), the borrower under which is Volen Properties 7, LLC (**"Borrower"**).

3. In connection with Lender's ownership of the Loan, Lender is the holder of that certain Promissory Note, dated December 15, 2006, in the original principal amount of $860,000.00, the maker of which is identified as Borrower (the **"Note"**).

4. In connection with Lender's ownership of the Loan, Lender is also the owner of that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing (the **"Security Instrument"**), dated as of December 15, 2006, under which Borrower is the grantor. A copy of the Security Instrument is attached hereto as <u>Exhibit 2</u>.

5. By the terms of the Security Instrument, Borrower granted a first-priority lien on certain real property, improvements thereon, and personal property identified in the Security Instrument (collectively, the **"Property"**). The Property includes certain real property and improvements, comprising an 8822 square-foot, seven-unit office building located at 10940 Fair Oaks Boulevard in Fair Oaks, California.

6. The Loan is in default, including by virtue of Borrower's failure to make monthly payments on the Loan, as and when called for under the Note and Security Instrument, since October 2012. Borrower's obligations under the Loan have been accelerated and are immediately due and owing to Lender.

7. Borrower's principal and managing member is Bart W. Volen (**"Volen"**). On March 20, 2012, the United States commenced this *in rem* action against certain properties owned by entities owned and/or controlled by Mr. Volen, seeking forfeiture of such properties. Among the properties that are the subject of this action is the Property.

8. Accordingly, the Property is subject to liquidation via the foreclosure process (which may be judicial or non-judicial under California law) by virtue of Borrower's default on the Loan, or possible via the forfeiture provisions of 18 U.S.C. Section 981, *et seq*.

9. Plaintiff, Lender, and Borrower desire to maximize the return from a sale of the Property, so that Lender's secured indebtedness may be paid in full from such sale and so that the proceeds of the sale in excess of the debt owed to Lender may be disbursed to the IRS

pending further order of the Court.  Lender has duly filed its claim in this case in the following amounts: principal in the amount of $811,624.33; interest through April 19, 2012 in the amount of $7621.05; default interest through April 19, 2012 in the amount of $338.19; interest after April 19, 2012 at the per diem rate of $155.40; default interest after April 19, 2012 at the per diem rate of $112.73; processing and documentation fees in the amount of $75.00; fees and costs, including attorneys fees, through April 19, 2012 in the amount of $14,755.00; and fees and costs, including attorneys fees, that have accrued and have continued to accrue thereafter (collectively, the **"Indebtedness"**).

      10.      While recognizing that nothing is certain, Plaintiff, Lender, and Borrower have agreed that, and are hopeful that, the Property may have a value in excess of the Indebtedness. Plaintiff, Lender and Borrower have further agreed that neither a foreclosure sale of the Property nor an immediate sale of the Property under 18 U.S.C. Section 981 *et seq.* would maximize the return on the Property and instead would virtually ensure that the return for the Property would be less than the amount of the Indebtedness. Accordingly, Plaintiff, Lender, and Borrower have stipulated and agreed that the superior course of action would be to appoint Scott as Receiver so that Scott may administer the Property, take such actions as are reasonably necessary to increase the marketability of the Property, market the Property – in an orderly but prompt fashion – for sale, and then sell the Property pursuant to a procedure agreed to by Plaintiff and Lender.

      11.      Scott is a principal at BLR Asset Management (**"BLR"**), which has experience managing real property throughout the State of California.  A copy of Scott's *curriculum vitae* is attached hereto as <u>Exhibit 3</u>.

      12.      Scott shall retain Voit Real Estate Services as the broker for sale of the Property. Scott proposes to market the Property for sale over a period of approximately 120 days.  After

such marketing Scott will, subject to the terms and provisions hereinafter set forth in this paragraph, sell the Property free and clear of Plaintiff's interest and Lender's interest on a specified sale date (the **"Sale Date"**) to the third-party bidder (the **"Sale"**) placing the highest and best bid for the Property (the **"Third Party Bid"**), provided, however, if such Sale would result in a yield of net sale proceeds (after payment of a sale commission of six percent of the gross sale price to Voit, together with other expenses of sale) less than the Indebtedness and if such Sale is not approved by Lender, the Receiver will on the Sale Date sell the Property to the Lender (the **"Lender Sale"**) for an amount that is $1000.00 in excess of the Third Party Bid (the **"Lender Sale Price"**) (which Lender Sale Price may be paid by Lender by Lender crediting such Lender Sale Price against the Indebtedness).

13. Following consummation of the Sale or Lender Sale, net proceeds of the sale up to the amount of the Indebtedness shall be delivered to Lender at closing, the Receiver shall retain an amount equal to the amount of his unpaid fees and costs pending approval of such fees and costs by the Court, the Receiver shall forward remaining proceeds to the IRS pending further order of the Court, Lender shall release its lien on the Property of record, and the IRS shall withdraw its lis pendens on the Property.  This Order is self-effectuating and not only approves the Sale or Lender Sale, but serves as confirmation of the same, without further order of the Court.  The Court finds that the purchase price paid after the Receiver's marketing efforts shall establish the fair value of the Property, and Plaintiff, Lender and Borrower have waived the benefits of any other procedure that might be applicable, under law or otherwise, that may establish fair or appraised value.  In the event of sale to the Lender, no broker's commission shall be payable in connection with such sale.

14. Scott is appointed as Receiver, without bond, to act and serve as receiver with respect to the Property, and with respect to the income therefrom, whether now existing or hereafter collected, including the rents, profits and income from the Property.

15. Effective immediately, the Receiver is authorized to take and have complete and exclusive control, possession and custody of the Property, together with any and all forms of accounts, accounts receivable, payment rights, cash, and cash equivalents, all of which shall be delivered to the Receiver, without any right of offset or recoupment, by Borrower and its agents, managers, and/or property managers.

16. Delivery to the Receiver shall include: (1) all keys; (2) all leases; (3) all security deposits, rent, prepaid rent, other sums relating to the use, enjoyment, possession, improvement or occupancy of all or any part of the Property; (4) any and all licenses maintained in connection with the Property; (5) any and all agreements entered into in connection with the Property; (6) any and all contracts in effect with respect to any of the Property; and (7) all bank accounts, other deposit accounts, credit card receipts, demand deposits, reimbursement rights, bank deposits, security deposits, and all other forms of accounts, accounts payable, payment rights, cash, and cash equivalents.

17. Borrower and its agents, managers and property managers shall not dispose of, dissipate, mishandle or misappropriate any of the Property.

18. The Receiver is hereby immediately vested with (and Borrower and its agents, managers and property managers shall immediately deliver) the books and records with respect to the operation of the Property.

19. The Receiver is authorized to operate, lease, market for sale or lease and, subject to the terms set forth above in this Order, sell the Property free and clear of liens, encumbrances

and other interests in the Property, with the lien of Lender and the interest of Plaintiff in the Property attaching to any cash proceeds of such sale.  Such sale is in the best interests of the receivership estate created hereby and is in the best interests of the parties.

20. The Receiver is authorized to retain, hire or discharge employees at the Property, without any liability to the Receiver, and is authorized to retain a property manager and a listing agent for the Property, including as set forth above in this Order.

21. The Receiver is authorized to make payments and disbursements, in the ordinary course of business, as may be needed and proper for the preservation of the Property.

22. The Receiver is authorized to receive and collect any and all sums due and owing to Borrower, whether the same are now due or hereafter become due and owing, and to deposit such sums into an account in its own name (which sums shall not be commingled with any other funds) established and maintained by the Receiver;

23. The Receiver is authorized to maintain appropriate insurance, to continue any current insurance policies in place, and to purchase further insurance as the Receiver deems appropriate, and Borrower is ordered not to discontinue or interfere in any manner with insurance policies currently in place.

24. The Receiver is authorized to prepare and file tax returns with respect to the Property as may be required by law, provided, however, that the Receiver shall not be responsible for the preparation of any tax returns for Borrower, and Receiver is authorized to appeal any real estate tax assessment of the Property.

25. The Receiver is authorized to: (1) negotiate and enter into new leases, occupancy agreements and contracts in the ordinary course of the business of the Property; (2) pay all utilities, expenses and other obligations secured by, or which may give rise to, liens, and all other

outstanding obligations to suppliers and servicers in the ordinary course of business; (3) make repairs necessary to the maintenance of the Property, including, but not limited to, all repairs to remediate any environmental conditions present at the Property, in order to preserve the Property in the ordinary course of business, provided, however, that the Receiver shall not make any improvements, repairs or remediations having a cost of $5000.00 or more without first obtaining Court approval or consent of the parties to the Stipulation; and (4) take all steps necessary to comply with all requirements, regulations and laws applicable to the Property, and to deal with all regulatory authorities in connection with the same, including but not limited to obtaining licenses, permits or approvals as allowed or required by law.

26.     The Receiver is authorized to apply income from the Property, subject to the lien rights of Lender, as follows: (1) to the Receiver's approved fees and expenses; (2) to current operating expenses of the receivership incurred by the Receiver in the ordinary course of business; and (3) to the obligations owed to Lender by Borrower.

27.     The Receiver is authorized to maintain sufficient cash on hand to enable the Receiver to meet expenses, including expenses relating to the operation of the Property in the ordinary course of business.

28.     The Receiver is authorized to retain a property manager (the "**Property Manager**") for the Property. The Property Manager shall receive a management fee equal to $850.00 per month, and the Receiver shall receive a receivership fee of $150.00 per hour, not to exceed $500.00 per month. The Receiver and Property Manager shall be entitled to reimbursement for reasonable out-of-pocket costs and expenses. The foregoing shall be the sole compensation payable to the Receiver and the Property Manager, notwithstanding any engagements made by the Receiver and notwithstanding any amount of monies that may be

distributed by the Receiver to Plaintiff or any other person or entity in the course of the receivership.

29. No person or entity may file suit against the Receiver, in his capacity as Receiver, unless otherwise authorized in advance by this Court.

30. The Receiver, and those agents and any property manager acting under his control, shall have no personal liability in connection with any obligations owed by Borrower to Borrower's creditors, and no creditor of Borrower (other than Plaintiff and Lender herein) may seize or attempt to seize any property delivered to the Receiver hereunder.

31. The Receiver, and those agents and any property manager acting under his control, shall have no personal liability in connection with their conduct in the course of this receivership, except for claims due to their failures to comply with the Orders of this Court.

32. Nothing contained in this Order shall be construed as obligating the Receiver to advance its own funds in order to pay the costs and expenses of the receivership.

33. The Receiver may apply at any time to the Court for further instruction and for further power necessary to enable the Receiver to properly fulfill his duties.

34. The entry of this Order shall not in any manner preclude any consensual resolutions that may be reached between or among any of the parties to the Stipulation.

35. The Receiver shall not be required to post any receivership or surety bond as a condition to his appointment.

36. Except for the rights and benefits established by the terms of the Stipulation and this Order, and so long as the parties hereto comply with their obligations hereunder, Lender waives any rights to further litigate against the United States concerning its interest in the Property or to petition for remission or mitigation of the forfeiture.

37. Unless otherwise provided by the Stipulation or this Order, or specifically directed by order of this Court, Lender is hereby excused and relieved from further participation in this action.

38. The United States, Lender, and Borrower agree to execute further documents, to the extent reasonably necessary, to implement the terms of the Stipulation and this Order and convey marketable title to the Property.

39. Each of the parties to the Stipulation shall bear their own attorneys fees and costs that were incurred with respect to the commencement, prosecution, and defense of this litigation that were specifically applicable to the Property, provided, however, neither the Stipulation nor this Order shall waive Lender's rights under its applicable loan documents to recover its fees and costs from Borrower, any other obligor for the debt owed to Lender, or from proceeds of Lender's collateral, including the Property.

40. For purposes of effectuating the Stipulation, the parties do not contest that there was probable cause for the posting of the defendant Fair Oaks Property, and for the commencement and prosecution of this forfeiture action against the defendant Fair Oaks Property, and further agree that the Court may enter a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465, with respect to the defendant Fair Oaks Property.

41. There are no other terms or conditions other than those specified in the Stipulation and this Order.

42. In the event that one party asserts that another party has breached the Stipulation or this Order, or failed to comply with any term of the Stipulation or this Order, the parties hereby agree that the U.S. District Court for the Eastern District of California, Hon. Troy L.

Nunley, District Judge, shall retain jurisdiction to enforce the terms of the Stipulation and this Order.

43. Third parties, including any title company, may rely upon this Order, and a certified copy of this Order may be recorded by any such title company or by any party with the office of the recorder of deeds in the county in which the Property is situated, and the clerk and other agents of such office shall accept and record this Order upon such presentation.

44. If any title insurance company working with any party to insure title to the Property requires revisions to this Order, the parties may present a modified version of this Order for expedited consideration and entry by the Court.

Dated: October 31, 2013

_____
Troy L. Nunley
United States District Judge