JEFFER MANGELS BUTLER & MITCHELL LLP
ROBERT B. KAPLAN, P.C. (Bar No. 76950)
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3813
Telephone: (415) 398-8080
Facsimile: (415) 398-5584

Attorneys for MECHANICS BANK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>            Plaintiff,<br><br>       v.<br><br>REAL PROPERTY LOCATED AT 149 G STREET, LINCOLN, CALIFORNIA, PLACER COUNTY, APN: 008-266-015-000, INCLUDING ALL APPURTENANCES AND IMPROVEMENTS THERETO, ETC, ET AL.<br><br>            Defendants. | CASE NO.   2:12-cv-00705-TLN-DAD<br><br>1.  **ORDER APPOINTING RECEIVER; AND**<br><br>2.  **PRELIMINARY INJUNCTION IN AID OF RECEIVER** |

The Court, having reviewed that certain Stipulation for Order Appointing Receiver; and Preliminary Injunction in Aid of Receiver executed by the United States of America, , Mechanics Bank and Volen 9 Properties LLC and good cause appearing therefor:

IT IS HEREBY ORDERED THAT John Connolly IV is hereby appointed as receiver (in such capacity, the "Receiver") over the Property (including the real property commonly known as 10293 Rockingham Drive, Rancho Cordova, California, Sacramento County, including all

appurtenances and improvements thereto) and Rents[1] subject to the condition, that before entering upon his duties as Receiver, he shall take the oath and file a bond with a surety thereon approved by this Court in the sum of $15,000.00 to secure the faithful performance of his duties as such receiver.

IT IS FURTHER ORDERED that the Receiver shall have the following powers and responsibilities:

1. To enter, gain access to and take possession of the Property and the Rents, to exclude and evict Volen Properties 9, LLC (the "Borrower"), or anyone claiming under or through Borrower therefrom who are not under valid leases or rental agreements to use, operate, manage and control the Property, to receive the Rents, issues, income, profits, revenues, royalties, lease payments, security deposits and profits therefrom; to care for, preserve, protect, secure and maintain the Property, and the Rents and incur the expenses necessary for such care, preservation and maintenance; and to do all things and to incur the risks and obligations ordinarily incurred by the Borrower, managers and operators of similar businesses and properties, as such Receiver, and no risks or obligations so incurred shall be at the personal risk or obligation of the Receiver, but shall be a risk or obligation of the receivership estate;

2. To demand, collect and receive the Rents, issues, income, profits, revenues, prepaid rent, percentage rent based on gross annual sales or the like, tenant improvement deposits, royalties, lease payments and security deposits in the possession of Borrower, or now due and hereafter coming due from the tenants or lessees of any portion of the Property;

3. To let, rent or lease from time to time any part of Property and to keep the buildings thereon insured and in good repair;

4. To take possession of and receive from any and all banks, savings and loan associations and/or any financial institutions any monies and funds on deposit in said banks, savings and loan associations and/or any financial institutions in the name of the Borrower, to the extent that said accounts contain the Rents, issues, income, profits, revenues, storage unit rentals, royalties,

---

[1] All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in that certain Stipulation for order Appointing Receiver Ex Parte; and Preliminary Injunction in Aid of Receiver filed in the above-entitled action.

PRINTED ON RECYCLED PAPER
SF 2043967v4

lease payments or security deposits generated by or arising out of the Property, and the Receiver's receipt of said monies and funds shall discharge said banks, savings and loan associations and/or any financial institutions from further responsibility for accounting to said account holder for monies and funds for which the Receiver shall give his receipt;

   5. To take possession of all the books and records pertaining to the Property including, without limitation, permits, licenses, blueprints, leases, lease amendments, budgets, financial statements, balance sheets, profit loss statements, general ledgers, check registers, and any Property financial information, architectural documents, plans, and specifications and any hard drives, disc drives, zip drives, and discs containing any of the foregoing information from the Borrower, wherever located, as the Receiver deems necessary for the proper administration, management and/or control of the estate, but said books and records shall be made available to said Borrower as is reasonably necessary;

   6. To execute and prepare all documents and to perform all acts, either in the name of the Borrower or in the Receiver's own name, which are necessary or incidental to preserving, protecting, managing and/or controlling the Property and the receivership estate;

   7. To employ agents, servants, employees, guards, clerks, accountants, on-site managers and management consultants to administer the receivership estate and to collect said Rents, issues, income, profits, revenues, storage unit rentals, royalties, lease payments and security deposits and profits therefrom, manage the Property, and keep the same insured and in good repair, if the Receiver shall deem the same necessary, and to pay the reasonable value of said services out of the Rents received;

   8. To require the Borrower to notify the Receiver upon the Receiver's taking possession of the Property whether or not there is sufficient insurance coverage on the Property, to provide the Receiver with the identity of the Borrower's insurance company, insurance agent's name and contact information and to provide the Receiver with copies of all its insurance policies relating to the Property. If sufficient insurance coverage does exist, the Borrower shall be responsible for naming, and is hereby ordered to name, the Receiver as an additional insured on the insurance policy(ies) for the period that the Receiver shall be in possession of the Property. If there is

insufficient insurance coverage, it is hereby ordered that the Receiver shall have thirty (30) working days to procure said insurance on the Property, provided that the Receiver has funds available to do so. If the Receiver does not have sufficient funds to do so, the Receiver shall seek instructions for the Court with regard to whether insurance shall be obtained and how it is paid for;

9. To hold the monies coming into possession of the Receiver pursuant to his operation of the business thereto, and not expended for any of the purposes herein authorized, shall be held by said Receiver for the payment of the Borrower's obligations to Mechanics Bank sued upon in the Complaint;

10. To establish bank accounts for the deposit of monies and funds collected and received in connection with the Receiver's administration of the receivership estate, at any financial institution the Receiver deems appropriate, provided that any funds on deposit at said financial institution are fully insured by an agency of the United States government;

11. To institute ancillary proceedings in this state or other states and countries as are necessary to preserve and protect the receivership estate, and the Receiver may engage the services of legal counsel, if necessary, upon prior approval of the above-entitled Court. The Receiver may pay for such services from the funds of the receivership estate;

12. To the extent feasible, the Receiver shall, within thirty (30) days of his qualification hereunder, file in this action an inventory of the Property which he shall have taken possession pursuant to this order per California Rule of Court ("CRC") 3.11381 and shall file supplemental inventories as needed;

13. To prepare periodic interim statements reflecting the Receiver's fees and administrative costs and expenses incurred for said period in the operation and administration of the Receivership estate. The Receiver shall serve upon the parties a monthly report with details as required by CRC Rule 3.1182. Upon completion of an interim statement, and the mailing of such statement to the parties' respective attorneys of record, or any other designated person or agent, and if no objection is received within 10 calendar days after the mailing of the interim statement, the Receiver shall pay from the estate funds, if any, the amount of said statement based upon the fee schedule set forth in the Declaration of John Connolly IV filed in support of Stipulation for Order

Appointing Receiver Ex Parte; and Preliminary Injunction in Aid of Receiver previously filed in the above-entitled action.  Despite the periodic statement of Receiver's fees and administrative expenses, such fees and expenses shall be submitted to the Court for its approval and confirmation, in the form of a stipulation among the parties, or the Receiver's Final Accounting and Report;

14. To take possession of all the books and records of Borrower wherever located, as the Receiver deems necessary for the proper administration, management and/or control of the receivership estate;

15. If there are insufficient funds in the receivership estate to pay expenses of the receivership, the expenses of the receivership estate (i) shall initially be paid by the Mechanics Bank by way of Mechanics Bank's issuance of a Receiver Certificate in the amount of $25,000.00, and (ii) thereafter, may be paid from time to time by way of Mechanics Bank's issuance of additional Receiver Certificates in in a total amount not to exceed $100,000.00, all in the form attached hereto as Exhibit A and incorporated herein by this reference as though set forth in full, all subject to the right of the Receiver or Mechanics Bank, in their discretion, to seek further orders of this Court with respect thereto.   Any such Receiver Certificates issued by the Receiver to Mechanics Bank shall not be the personal obligation of the Receiver but the obligation of the receivership estate;

16. The Receiver shall not be responsible for payment of any real property taxes, utility bills, unpaid payroll expenses or other unpaid invoices for services or utilities incurred by the Borrower, or for the benefit of, the Property prior to the Receiver's taking possession of the Property.  No utility or other vendor may terminate service or the provision of other goods or services to the Property as a result of the non-payment of pre-receivership obligations, without prior order of this Court;

17. The Borrower, its agents, servants, employees or representatives, or all persons or entities acting under or in concert with the Borrower, on receipt of a copy of this Order shall provide the Receiver with the Tax Identification number utilized by the Borrower for the operation of the Property.  The Receiver shall be entitled to utilize the aforementioned Tax Identification number during his operation of the Property;

18. The Receiver shall be authorized to open all mail addressed to the Borrower, its agents, servants, employees or representatives, or all persons or entities acting under or in concert with the Borrower at the Property.  The Receiver is authorized to make copies of this mail, and then forward this mail to the addressed to the Borrower, their agents, servants, employees or representatives, or all persons or entities acting under or in concert with the Borrower at the address provided by the Borrower;

19. The Receiver and the parties to this case may, at any time, apply to this Court for further or other instructions or orders and for further powers necessary to enable the Receiver to perform the Receiver's duties properly;

20. The Receiver is authorized to endorse checks payable to the Borrower, to send notice to accounts receivable debtors of the Borrower directing the same to make payments due to the Borrower which are part of the Property or the proceeds thereof to the Receiver, to undertake whatever actions are reasonable or necessary to collect the accounts receivable of the Borrower, and to compromise the amounts owing from account debtors of the Borrower if in the Receiver's reasonable business judgment it is appropriate to do so;

21. The Receiver is authorized to institute ancillary proceedings in this or in other states as are reasonable or necessary to preserve and protect the Property and receivership estate, to collect upon accounts receivable which are part of the Property to obtain possession and collect any other part of the Property, and to defend himself from the action of others;

22. The Receiver shall have no responsibility for filing federal and state income tax returns or federal or state payroll tax returns and shall not be responsible for paying any unpaid federal and state payroll taxes and expenses of the Borrower.  The responsibility for such filings and payments lie exclusively with the Borrower and their agents, servants, employees and representatives;

23. The Receiver shall not be obligated to upgrade the Property or make any improvements thereto, unless and until ordered to do so by the above entitled Court;

24. The Receiver shall not be obligated to contribute personal funds in the performance of his duties hereunder;

25. Any security or other deposits which tenants have paid to the Borrower or its agents and which are not paid to the Receiver and over which the Receiver has no control, shall be obligations of the Borrower and may not be refunded by the Receiver without an order of the above entitled Court. Any other security or other deposits which tenants have paid or may pay to the Receiver, if otherwise refundable under the terms of their leases or agreements with the Receiver, shall be refundable by the Receiver in accordance with such leases or agreements;

26. The Receiver shall be forthwith authorized to list the Property for sale;

27. Any actions taken by the Receiver to sell the Property shall not constitute or create a representation or warranty by the Receiver as to any aspect of the sale thereof and any such sale shall be "as is," "where is,, "with all faults" and with no representations and/or warranties and shall be without risk or liability to the Receiver and/or the receivership estate;

28. The Receiver shall be authorized to negotiate for a sale of the Property and shall be authorized to prepare and negotiate a purchase and sale agreement ("PSA"), with respect to the sale of the Property. Any PSA executed by the Receiver in connection with the sale of Property shall provide, inter alia, that the sale of the Property is subject to the approval of the above-entitled Court. Any PSA shall be prepared, negotiated and ultimately agreed upon in a commercially reasonable manner;

29. The Receiver shall have the right, in his sole discretion, to accept, reject and/or make any counteroffers with respect to any offers made to purchase the Property prior to the negotiation and execution of the PSA;

30. The Receiver shall have the right to perform such acts as reasonably may be required to sell the Property and to execute all documents and instruments reasonably necessary related thereto to close any escrow established for the sale of the Property, and to transfer title to the Property to a buyer, as provided for in any PSA approved of by the above-entitled Court;

31. The Receiver shall file a motion to approve of the PSA negotiated for a purchase of the Property or, alternatively, any of the parties may file an application for instructions with the above-entitled Court seeking an order from the Court to approve of the Receiver entering into the PSA. The motion or application for instruction shall be served on counsel of record for the

parties in the above-entitled action.  Any of the parties may object to any motion filed by the Receiver or any application for instructions filed by any of the parties seeking the approval of the above-entitled Court for any PSA negotiated by the Receiver, and the Court's powers to review the motion and any objections thereto include, but are not limited to, the PSA's commercial reasonableness and any payments from escrow;

32. The Receiver may proceed to close a sale of the Property pursuant to any PSA approved of by the above-entitled Court subject to the terms and conditions set forth in the PSA;

33. Any sale of the Property authorized by the PSA shall be free and clear of all monetary liens, encumbrances and interest, with any unsatisfied and unreleased liens to attach to the proceeds of sale;

34. The Receiver is authorized to pay out the proceeds of any sale of the Property authorized by the above-entitled Court pursuant to the PSA any unpaid real estate taxes and assessments, recordation fees, transfer taxes, closing costs and reimbursement of any costs of sale incurred in connection with the sale thereof and other expenses set forth in the PSA, and is further authorized to pay out of the sales proceeds at the close of escrow the outstanding obligations then due and owing by the Borrower to Mechanics Bank secured by the Property;

35. The net proceeds remaining from the sale of the Property after payments of the amounts set forth in section 34 above shall be held by the Receiver in a segregated interest-bearing account until further order of this Court; and

36. By closing escrow and taking title to the Property, the purchaser identified in the PSA acknowledges that: (i) the purchaser has no recourse against the Receiver (or his agents) for any claim or cause of action; and (ii) the purchaser's sole and only recourse is against purchaser's title insurance policy, if applicable, except as expressly permitted by any PSA approved of by the above-entitled Court.  The above-entitled Court retains jurisdiction over any dispute that may arise involving Receiver with the sale of the Property pursuant to the terms of any PSA approved of by the above-entitled Court.

/ / /

PRINTED ON RECYCLED PAPER
SF 2043967v4

**PRELIMINARY INJUNCTION IN AID OF RECEIVER**

IT IS FURTHER ORDERED that the Borrower, and all persons and entities now in possession of any part of the Property and not holding under valid leases, or rental agreements, shall forthwith surrender their possession thereof to said Receiver, and that all tenants or lessees in possession of any part of the Property, and such other persons or entities as may be lawfully in possession thereof, are hereby directed to attorn as tenants, or lessees to said Receiver, and until further order of this Court, to pay over to said Receiver all Rents, issues, income profits, revenues, and lease payments of the Property now due and unpaid or that may hereafter become due, and all persons and entities liable for such Rents, issues, income, profits, revenues, royalties or lease payments are hereby enjoined and restrained from paying any Rents, issues, income, profits, revenues, royalties, storage unit rentals or lease payments for the Property to the Borrower, its agents, servants or attorneys.

IT IS FURTHER ORDERED that the Borrower and its agents, employees and representatives, and all persons or entities acting under or in concert with the Borrower, are restrained and enjoined from engaging in or performing, directly or indirectly, any or all of the following acts:

1. Demanding, collecting, receiving or in any other way diverting or using any of the Rents, issues, income, profits, revenues, royalties or lease payments emanating from the Property;

2. Interfering with or hindering in any way whatsoever the Receiver in the performance of the Receiver's duties herein described and in the performance of any duties incident thereto;

3. Interfering in any manner with the Property, including its possession;

4. Transferring, conveying, assigning, pledging, deeding, selling, renting, leasing, encumbering, changing ownership of, vesting of title to, or otherwise disposing of the Property; and

5. Terminating or otherwise affecting any of the utilities which service the Property.

PRINTED ON RECYCLED PAPER
SF 2043967v4

IT IS FURTHER ORDERED that:

1. All Rents, security deposits, issues, income, profits, revenues, royalties, and lease payments of the Property which are received, or have been received, by the Borrower shall be turned over to the Receiver within five (5) days, and the Borrower shall simultaneously, upon said turnover, deliver to the Receiver written verification of the source of all said monies being turned over;

2. The Borrower, its agents, servants, employees or representatives, or any persons or entities acting under or in concert with Borrower, shall immediately turn over to the Receiver possession of all records, books of account, ledgers, and all documents and papers pertaining to the operation of the Property and the Rents or lease payments due therefor; and

3. Mechanics Bank and its officers, employees and agents shall have immediate access to the Property to enable them to view and inspect the Property for the purposes of appraisal.

IT IS FURTHER ORDERED that the Receiver is not authorized to take possession of any monies of the Borrower except for those which are the security deposits, Rents, issues, income, profits, revenues, royalties, storage unit rentals or lease payments of the Property described in the Deed of Trust.

IT IS FURTHER ORDERED that the requirement Mechanics Bank shall file an undertaking pursuant to Federal Rule of Civil Procedure 65 is hereby waived.

Dated: September 11, 2015

_____
Troy L. Nunley
United States District Judge